J-A20043-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WESLEY RICHARDS A/K/A WESLEY | : | |
| RICHARD BARNES A/K/A JAON | : | |
| HAMILTON, | : | |
| | : | |
| Appellant | : | No. 1531 WDA 2017 |

Appeal from the PCRA Order October 17, 2017
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0000567-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          FILED NOVEMBER 20, 2018

Wesley Richards a/k/a Wesley Richard Barnes a/k/a Jaon Hamilton ("Richards") appeals from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA").  See 42 Pa.C.S.A. §§ 9541-9546. Additionally, Richards's counsel, Charles R. Pass, III, Esquire ("Attorney Pass"), has filed a separate Application to withdraw as counsel and an

accompanying brief.[1]  We grant Attorney Pass's Application to withdraw and affirm the PCRA court's Order.

This Court previously set forth the factual history of this case as follows:

This matter arises out of the shooting death of the [victim, Donald Lowry ("Lowry")], on October 18, 2013[,] in a bar on the North Side of Pittsburgh. ... When [Lowry] entered the bar the first time, the security worker, Brian Collins [("Collins")], searched him and found a pocket knife[,] which he removed and placed behind the bar.  Later, [Lowry] left the bar and the knife was returned to him.  Shortly thereafter, [Lowry] returned and was searched again[,] but the knife was not found.  [Richards] and his companion, Walter Banks [("Banks")], were also searched each time they entered or returned to the bar[,] but found no weapons.  [] Collins knew [Richards] for several years and also knew [Lowry] from the neighborhood.

At some point[,] [] Collins became aware of something happening towards the back of the bar[,] and as he went towards that area[,] he saw [Lowry] falling to the ground and then saw [Richards] come around the corner with a gun in his hand.  [] Collins grabbed [Richards] and pinned him against the bar[,] but was then hit in the head with a bottle by [] Banks.  Stunned by the blow to the head, [] Collins let go of [Richards,] and when he looked again he saw [Richards] standing over [Lowry,] shooting at him three times as he lay on the ground.  [] Collins then followed [Richards] and [] Banks towards the back as they left but then returned to [Lowry].  [] Collins found [Lowry] still alive and saw a closed pocket knife on the ground next to him.[fn]

_____

[1] Attorney Pass's appellate brief appears to be in the nature of a brief filed pursuant to Anders v. California, 386 U.S. 738 (1967), which applies when counsel seeks to withdraw from representation on direct appeal.  When, as in this case, counsel seeks to withdraw from representation on collateral appeal, the dictates of Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc), are applicable.  However, because an Anders brief provides greater protection to a defendant, this Court may accept an Anders brief in lieu of a Turner/Finley "no-merit" letter.  See Commonwealth v. Reed, 107 A.3d 137, 139 n.5 (Pa. Super. 2014).

[fn] The autopsy showed [Lowry] died of gunshot wounds to the trunk. The first entered in the central upper back and the second in the lateral left buttock.

... [T]he disc jockey who was working at the bar that night, Sylvanius Flowers [("Flowers")], ... testified that he observed [Lowry], [Richards] and [] Banks standing near the bar together and they appeared to be laughing and joking. He then saw [Richards] backing up toward the stairs and pull a gun out.

* * *

[] Flowers also testified:

He pulls the gun up. He fires a shot. [Lowry] duck[s] and take[s] the other guy's arm off [from around his neck] and he tries to run. [Then] after that he falls down. I don't know if he was hit or not but he falls down. Then [Richards] comes up from around the back, steps back some, and starts running back, and goes and shoots him three times in the back.

[] Flowers testified that he never saw a knife in [Lowry's] hand and never saw him threaten [Richards] with a knife. He also testified that he saw ... [] Collins[] grab [Richards] and wrestle with him for the gun before [] Collins was hit in the head with a bottle. The bartender, Tylonda Northington, also testified that she heard shots and ducked behind the bar and then saw [] Collins struggling with [Richards] and [Richards's] hand come over the bar with a gun in it.

The Commonwealth also introduced video surveillance taken from several cameras in the bar that showed [Lowry], [Richards] and [] Banks inside the bar before and during the shooting and confirmed the testimony of the eyewitnesses.

Commonwealth v. Richards, 153 A.3d 1120 (Pa. Super. 2016) (unpublished memorandum at 1-3) (citation omitted, footnote in original).

On November 3, 2014, following a nonjury trial, Richards was found guilty of murder of the third degree, persons not to possess a firearm, and

firearms not to be carried without a license.  On February 11, 2015, the trial court sentenced Richards to an aggregate term of 20-40 years in prison.  This Court affirmed the judgment of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal.  See id., appeal denied, 164 A.3d 468 (Pa. 2016).

Richards filed a timely pro se PCRA Petition.  The PCRA court appointed counsel, who filed an amended PCRA Petition.  The PCRA court later issued a Pa.R.Crim.P. 907 Notice.[2]  Thereafter, the PCRA court dismissed the Petition. Richards filed a timely Notice of Appeal.

Richards raises the following question for our review:

> Whether trial counsel was ineffective for failing to preserve a claim that the conviction for [third-degree murder] was against the weight of the evidence that the Commonwealth disproved, beyond a reasonable doubt, that [Richards's] conduct constituted Voluntary Manslaughter on the basis of imperfect self-defense?

Turner/Finley Brief at 2.

Before addressing Richards's claim on appeal, we must address Attorney Pass's Turner/Finley "no-merit" brief and accompanying Application to withdraw as counsel.  Where counsel seeks to withdraw on collateral appeal, the procedure outlined in Turner/Finley must be followed.  In Commonwealth v. Pitts, 981 A.2d 875 (Pa. 2009), our Supreme Court explained the procedure for withdrawal as follows:

_____

[2] The PCRA court granted Richards's PCRA Petition in part, and awarded him credit for time served (17 days).  See PCRA Court Opinion, 4/30/18, at 2.

- 4 -

1) A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;

2) The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3) The PC[R]A counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

4) The PC[R]A court conducting its own independent review of the record; and

5) The PC[R]A court agreeing with counsel that the petition was meritless.

Id. at 876 n.1 (citation omitted). Further, our Court has held that the Supreme Court in Pitts did not expressly overrule the additional requirement imposed by this Court in Commonwealth v. Friend, 896 A.2d 607, 615 (Pa. Super. 2006), stating that

PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed pro se, or with the assistance of privately retained counsel.

Commonwealth v. Widgins, 29 A.3d 816, 818 (Pa. Super. 2011).

Here, in the "no-merit" brief, Attorney Pass described the extent of his review, identified the issue that Richards sought to raise, and explained why that issue lacked merit. Additionally, Attorney Pass provided Richards notice of his intention to seek permission to withdraw from representation and a copy of the "no-merit" brief, and advised Richards of his rights in lieu of representation. Thus, we conclude that Attorney Pass has substantially

complied with the requirements necessary to withdraw as counsel. See

Commonwealth v. Karanicolas, 836 A.2d 940, 947 (Pa. Super. 2003)

(holding that substantial compliance with requirements to withdraw as counsel

will satisfy the Turner/Finley criteria). We now independently review

Richards's claims to ascertain whether they entitle him to relief.

> Our standard of review of a PCRA court's [dismissal] of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> * * *
>
> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

Commonwealth v. Franklin, 990 A.2d 795, 797 (Pa. Super. 2010) (citations

omitted).

Richards claims that his trial counsel was ineffective for failing to

preserve a claim that his conviction for third-degree murder was against the

weight of evidence. Turner/Finley Brief at 17-20, 22. Richards argues that

the evidence demonstrated that his conduct constituted imperfect self-defense

voluntary manslaughter. Id. at 18-19, 21, 22-23. Richards asserts that the

victim was seen possessing a knife twenty minutes before the shooting. *Id.* at 21.

With regard to a weight of the evidence claim, our standard of review is as follows:

> It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and quotation marks omitted).

The Pennsylvania Crimes Code defines murder of the third degree as any killing with malice that is not first-or second-degree murder. *See* 18 Pa.C.S.A. § 2502(c); *see also Commonwealth v. Baskerville*, 681 A.2d 195, 199-200 (Pa. Super. 1996).

> Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.... Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001) (citation, quotation marks, and brackets omitted). "[M]alice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012).

A defense of imperfect self-defense exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion. If the defender did not reasonably believe deadly force was necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable. A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

Commonwealth v. Truong, 36 A.3d 592, 599 (Pa. Super. 2012) (quotation marks and citations omitted); see also 18 Pa.C.S.A. § 2503(b).

When the defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt. The Commonwealth cannot sustain its burden of proof solely on the factfinder's disbelief of the defendant's testimony. The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact.

Commonwealth v. Rivera, 983 A.2d 1211, 1221 (Pa. 2009) (citations and quotation marks omitted).

In this case, the Commonwealth presented evidence that Richards did not believe deadly force was necessary, that Richards could have retreated safely, and that Richards provoked the incident. Indeed, Lowry did not exchange words with Richards, attempt to stab or injure Richards, or threaten Richards. See N.T., 10/29/14, at 13, 45 (noting that the pocketknife found under Lowry's body was folded and in a closed position). Further, testimony and video evidence confirmed that Richards approached Lowry, stood over

him, and shot him three times. See, e.g., id. at 42-44 (wherein Collins testified he attempted to restrain Richards after he saw Richards with a gun in his hand. Collins was hit in the head and released Richards, and saw Richards stand over Lowry and fire three shots); id. at 85-86 (wherein Flowers testified that he saw Richards pull out a gun to fire a shot and then Lowry fell down, and he saw Richards stand over Lowry, who was still on the ground, and shoot Lowry three times).

Thus, the evidence did not support an imperfect self-defense claim, and verdict was not against the weight of the evidence. Because Richards's underlying claim is without arguable merit, his ineffectiveness claim fails. See Franklin, 990 A.2d at 797.

Additionally, our independent review of the record indicates that the Petition is without merit. See Pitts, 981 A.2d at 876 n.1. Accordingly, we grant Attorney Pass's Application to withdraw and affirm the Order dismissing Richards's PCRA Petition.

Application to Withdraw granted; Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2018